# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CURTIS A. TAYLOR,
    Petitioner,

v.                                                Civil Action No. 3:06cv27
                                                   (Judge Bailey)

U.S. DISCIPLINARY BARRACKS, Commandant,
U.S. PAROLE COMMISSION,
    Respondent.

## REPORT AND RECOMMENDATION

On March 17, 2006, the *pro se* petitioner, Curtis Taylor, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at the Gilmer Federal Correctional Institution in Glenville, West Virginia. In the petition, the petitioner alleges that the U.S. Parole Commission wrongly rescinded his minimum parole release date. On May 31, 2006, the respondent[1] filed his Response to Petition for Writ of Habeas Corpus.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 2, 1996, the petitioner was sentenced by a Navy General Court-Martial to a dishonorable discharge and a term of incarceration of thirty-two years for attempted murder and aggravated assault. The conviction followed petitioner's not guilty plea and arose from charges

---

[1]In a § 2241 habeas corpus case, the proper party respondent is the Warden of the institution in which the petitioner is incarcerated. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495 (1973). Accordingly, the warden at FCI Gilmer is the proper respondent in this matter.

stemming from an incident at Camp Pendleton, California on June 18, 1995. (Doc. 6-3, p. 1). The petitioner was incarcerated at Camp Pendleton until April 8, 1997, when he was transferred to Fort Leavenworth, Kansas. (Doc. 6-6, p. 3). It would appear that the petitioner was committed to the custody of the Bureau of Prisons ("BOP") on September 30, 2002. His full term expiration date is June 17, 2027, while his projected release date is August 10, 2018 via good time credit. (Doc. (6-4, p. 2).

On July 11, 2005, a hearing examiner for the U.S. Parole Commission[2] conducted petitioner's initial parole hearing. At the time of the hearing, the petitioner had served 121 months of his sentence. (Doc. 6-8, p.1). In his hearing summary, the hearing examiner noted that the petitioner had kept clear conduct since being transferred to federal custody. Furthermore, while the Prehearing Assessment showed a list of eighteen incident reports received in military custody, the hearing examiner found that only two might not be considered administrative. Furthermore, the hearing examiner specified that many of the reports provided little or no description of the incident. All of the reports were discussed with the petitioner, who did not contest the reports and acknowledged that he had some problems getting along with staff in military custody. In his summary, the hearing examiner noted that he was "reluctant to hold this prisoner accountable for new criminal conduct in a prison facility with such sketchy information. However, it seems unavoidable to count 11/23/99 as a minor assault on another inmate. This examiner is recommending 12-16 months for that particular incident report." (Doc. 6-8, p. 1). On July 15, 2005,

---

[2]The United States Parole Commission has jurisdiction over the following types of cases; (1) Federal offenders who committed their offense before November 1, 1987; (2) D.C. Code offenders; (3) Uniform Code of Military Justice Offenders; (4) Transfer-Treaty cases; and (5) State probationers and parolees in Federal Witness Protection Programs.

the hearing examiner issued his overall evaluation and recommendation which recommended parole effective April 17, 2006 after service of 130 months.

On July 22, 2005, the executive reviewer added his comments to the parole recommendation. Specifically, the executive reviewer wrote: "I believe that the subject should serve 156 months for this premeditated attempted murder. This recommendation also takes into account his assaultive behavior while in custody, his numerous non-drug related administrative infractions and his programming while in federal custody." (Doc. 6-8, p.3).

On August 1, 2005, the Commission issued its decision, and the following action was ordered: "[c]ontinue to a presumptive parole on June 7, 2008, after service of 156 months." (Doc. 6-9, p. 1). As an explanation for its decision, the Commission noted that the petitioner's offense behavior had been rated as Category Eight severity because it involved attempted murder. In addition, the petitioner's salient factor score[3] was a 7. Commission guidelines for the petitioner's offense behavior are a range of 120+ months the be served before release for cases with good institutional adjustment and program achievement. However, the Commission noted that the petitioner had committed 17 non-drug related infractions, and the guidelines indicated a range of up to 2 months to be added for each non-drug related infraction. Finally, the Commission found that the petitioner had committed one new criminal conduct while in a prison facility of Category Two

---

[3]The salient factor score is determined by the following factors: (1) the number of prior convictions/adjudications; (2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmate was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense. A prisoner can score from one to ten. The higher the score, the better the prospects for success if released on parole. See 28 C.F.R. § 2.20 Salient Factor Score Manual.

severity because it involved assault on another inmate. Guidelines established by the Commission indicated a range of 12-16 months to be added to the petitioner's guidelines range. Accordingly, the petitioner's aggregate guideline range was 132+ months to be served. (Doc. 6-9, pp. 1-2).

The petitioner appealed the Commission's decision arguing, as here, that it wrongfully rescinded (more properly stated, revised) his parole date based upon the institutional infractions listed in his file because there was no record of the disciplinary proceedings. More specifically, the petitioner argued that the his file provided, at most, a brief description of the alleged misconduct, and there was no written statement of the evidence used to determine his guilt nor reasons given for the particular sanctions imposed.

Following an examination of the appeal, The National Appeals Board affirmed the decision continuing the petitioner's incarceration to a presumptive parole date of June 17, 2008. In rendering its decision, the Appeals Board found that the record established that the petitioner had pleaded guilty to a May 9, 1999 assault, and that his guilty plea provided a sufficient basis for the Disciplinary and Adjustment Board ("D&A Board") to find that he had committed the assault. The Appeals Board further found that the Commission acted within its authority when it accepted the finding of the D&A Board and imposed additional guidelines of 12 - 16 months for institutional misconduct.

## II. CLAIMS OF PETITION

The petitioner alleges that the U.S. Parole Commission wrongfully rescinded his expected parole release date [as recommended by the hearing examiner]. In support of this allegation, the petitioner alleges that the Commission improperly considered D&A Board reports from his confinement at Camp Pendleton and Fort Leavenworth. The petitioner maintains that the United

States Disciplinary Barracks failed to record and retain an accurate and constitutionally adequate record of any alleged institutional misconduct. Moreover, the petitioner alleges that a prisoner who has not been given a parole date but has a substantial expectation of parole may not have his expected parole date rescinded without some due process.

### III. STANDARD OF REVIEW

Judicial review of a decision by the Parole Commission is limited. See Brown v. Lundgren, 528 F.2d 1054 (5th Cir.1976); Billiteri v. United States Board of Parole, 541 F.2d 938 (2d Cir. 1976). "So long as there are no violations of any required due process protections and the Commission has acted within its authority, [the District Court] will not usurp the Commission's position as established in the statutory scheme enacted by Congress." Stroud v. United States Parole Commission, 668 F.2d 843, 846 (5th Cir. 1982). The District Court may review an action of the Parole Commission to determine whether the decision of the Commission is arbitrary and capricious or an abuse of discretion. Dye v. United States Parole Commission, 558 F.2d 1376, 1378 (10th Cir. 1977). An action of the Commission is arbitrary and capricious, or an abuse of discretion, when it is irrational, based upon impermissible considerations, or when it fails to comply with the Commission's own rules and regulations. Zannino v. Arnold, 531 F.2d 687, 690-91 (3rd Cir. 1976).

### IV. ANALYSIS

In making a parole decision, the Commission may consider official reports of the prisoner's prior record, reports from the staff of the facility where the prisoner is confined, and any other relevant information concerning the prisoner that is reasonably available. See 18 U.S.C. §4207. Furthermore, in determining parole guidelines, the Commission's regulations permit it to take into account "any substantial information available to it provided the prisoner is apprised of the

5

information and afforded an opportunity to respond." See 28 C.F.R. §2.19(c).

Here, the record before the Commission contained a number of incident reports from the D&A Board[4] covering rules violations by the petitioner from August 11, 1997 through March 15, 2001. All the reports were reviewed with the petitioner at his parole hearing, and he did not contest the reports. Each report indicates the date of the incident, the offense(s) committed, the petitioner's plea to the offense, and Board's finding as to guilt, the Board's recommended disciplinary action, whether the Commandant approved the recommendation, and acknowledgment by the petitioner. Only one incident report is pertinent to this Court's review, because it is the only one that affected the petitioner's parole eligibility date. (Doc. 6-5).

On May 9, 1999, the plaintiff was alleged to have committed three offenses, including assault consummated by battery. The petitioner pleaded guilty to that offense. (Doc. 6-5, p. 3). Because that incident was not merely an administrative violation, but rather, was new criminal conduct, it increased his guidelines range by 12-16 months, bringing his aggregate guideline range to 132+ months.[5]

While the petitioner argues that the Commission erred in considering the D&A reports

---

[4] A discipline and adjustment board is convened for the purpose of evaluating facts and circumstances surrounding alleged prisoner violations of institutional rules set forth in the facility handbook and for violations of the Uniform Code of Military Justice. Based on its findings, the board makes recommendations to the appropriate commander for appropriate action. Each case is to be considered on its own particular merits. Infractions that are relatively minor may be adjudicated by a one-person board, where as more serious infractions warrant a three-person board. See Defense Technical Information Center, www.dtic.mil.

[5] The petitioner's original conviction was for thirty-two years, and under parole guidelines he was not eligible for parole until he had served one-third of his sentence or 120 months. Adding the additional minimum 12 months for the new criminal conduct, brings his aggregate minimum guideline range to 132 months.

because the board's proceedings with regard to these alleged violations did not comport with the constitutional protections required by Wolff v. McDonnell[6], 418 U.S. 539 (1974), his argument is without merit given the record before the Court. The petitioner pleaded guilty to the only offense that increased his guideline range that must be served before he is eligible for parole. Therefore, even if some of the D&A hearings did not fully comport with the requirements of Wolff,[7] the Commission was clearly within its authority to find that the petitioner had committed an offense to which he had pleaded guilty. Accordingly, there is no evidence from which this Court can conclude that the Commission violated its own regulations nor that the Commission's action was arbitrary and capricious or an abuse of discretion.

## V. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the

---

[6] In Wolff, the Supreme Court ruled than an inmate has the constitutional right to call witnesses and present documentary evidence in his defense during prison disciplinary proceedings that may result in "substantial" deprivations of the prisoner's liberty. See Wolff v. McDonnell, 418 U.S. at 566.

[7] There are at least four incident reports to which the petitioner pleaded not guilty, but was subsequently adjudicated guilty by the D&A Board. Without further information from the United States Disciplinary Barracks it is impossible to determine whether the petitioner was afforded the due process protections afforded by Wolff in connection with those alleged violations.

7

right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: February 11, 2008

    /s/ James E. Sebert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE